is a consolidated argument in two cases, both entitled IN RE ARACHNID, number 2011-1430 and 1431. It will be 20 minutes of argument for Mr. Hankins, and I gather, Mr. Hankins, you have reserved five minutes for rebuttal, is that correct? That's correct, Your Honor. Go right ahead. Good morning. May it please the Court, my name is Steve Hankins. I'm here this morning to provide oral argument on behalf of the appellant, ARACHNID. The Court has consolidated this hearing to address two appeals and decisions by the Board of Patent Appeals. Those underlying decisions held that two of ARACHNID's patents, which I will refer to as the 189 and 575 patents, were invalid under Section 103 due to obviousness. The issues on appeal, or whether the Board erred in affirming the examiner's finding that the claims in the 189 patent were obvious over Frank, Anderson, and Vogel references. The second error addressed on appeal is whether the Board erred in affirming the examiner's finding that multiple claims in the 575 patent were obvious over Frank, Horn, and Vogel. Last, the issue raised on appeal is whether the Board erred in finding that the objective evidence of non-obviousness provided by ARACHNID did not rebut the examiner's finding of prima facie case of obviousness for both of the patents. In each case, the Court reviews the Board's ultimate legal determination of obviousness de novo and without deference. That's from the Zerko opinion. This Court examines the Board's factual findings to determine whether they are supported by the substantial evidence. Here, the Board has committed multiple errors, which have been thoroughly briefed, but I wanted to summarize three of them for you at the beginning of this argument. First, it is not disputed that the liberal claim construction policy that usually governs prosecution and reexamination proceedings does not apply in this case. Counsel, am I correct that your argument is what distinguishes the 189 patent and the 575 patent over the prior art is the user attract mode or the user attract system that's using those patents, is that correct? That's the key limitation that we argue is missing, Your Honor. Okay. There are others. All right. The Board and the solicitor both concede that the more stringent policy for claim construction, whereby the claims are construed to render them valid if possible, and that's from the past Matorum case, applies here. But after conceding that this was the proper standard, the Board failed to apply it. The Board examined the terms user attract mode and found the construction of that term so broad that it swept in art that is clearly inapplicable. That's the Vogel patent. Further, the Board reviewed art substantially similar to that that it already reviewed during the prosecution process, and that's the Frank reference, and went on to affirm the examiner's finding where the examiner made an about-face on the scope of that art and whether it was swept into the terms of the patent. The second primary error committed by the Board are that neither of the decisions are based on substantial evidence. Rather, almost every one of the Board's factual findings mimics the examiner. There are dozens of references in the decisions with this comment. We agree with the examiner. The procedural history here makes these statements remarkable and poignant examples of error. When the re-exam proceedings were before the examiner, the 575 and 189 patents were unexpired. Thus, the more liberal version of claim construction was appropriate. But once the Board had the patents in front of it for the re-exam, the patents had expired, triggering the more stringent claim construction policy. Again, no one disputes that that more stringent claim construction policy should be applied, but in fact, it was not applied. Under either standard of claim construction, there are simply too many gaps between the salient claim terms in the 189 and 575 patents on the one hand and the prior art on the other. I'll discuss these gaps in a minute, but they prevent either of the Board decisions under review here from being based on substantial evidence. The third primary error I'd like to point out for the Court this morning is related to the lack of factual underpinning, and it is the erroneous reliance by the examiner on the unspecified person of ordinary skill in the art. I'll refer to this person at times as the posita. Both the examiner and the Board repeatedly filled the gaps between the prior art and the patent claims by finding that the gap would have been obvious to the posita and filled by that posita. But this undisciplined reliance on the unspecified posita has been rejected by this Court in the past. Let's go back. You say the key limitation in the patents is the user attract mode. And the way I read everything, basically it's a system that kind of advertises itself, provides different types of information and data to a user. Maybe somebody's seated a little bit away from the apparatus. It'll call attention to the apparatus to people like that. Yes, Your Honor, there'll be a single display. And on that display, two things can occur under these patents. The first is the user attract mode, which attracts the user to come to the jukebox to play a song. And it does that by flashing a light, scrolling text. Playing information, playing videos related to the music that's on the jukebox. Now, going back to some of my earlier days, when we used to have jukeboxes. I mean, The Wizard and those things that sat on the floor. They used to have flashing lights. And once in a while, they'd sit there kind of dark. Then all of a sudden, they'd start flashing. And you'd kind of look over there to see what that was. Would you say that those flashing lights were also a user attract mode? You could call them a user attract mode, but I don't think that's what's contemplated under these patents. These patents were a development from those older systems, Your Honor. How about the Vogel patent, which had a suitable message that periodically delivered extorting passerbys to make a purchase? That is one section in the Vogel patent that refers to the cartoon-like animation that in one display can run continuously, while in the other display, the information relating to the user on the old disc is displayed. So you're saying that your invention had one display, whereas Vogel had two, but essentially they did the same thing. It's very important for the court to understand that the claim terms require that the display is adapted to be able, one display adapted to be able to present both the user attract information and the song information. In the 575 patent in particular, the feeding from the execute boxes in a single display of all of this information in a coordinated fashion, never at the same time, is what is unique and claimed in the patents. The primary construction by the board, where it expanded and should have used the more narrow construction principles applicable under past modorum is for this user attract data limitation. Figure 5 of both of the patents, as well as the specification, column 6, lines 39 through 56, clearly establish a single display through which the user attract data is fed only when the song identity data is not being presented. Two different courts have issued claim constructions where that construction was used. User attract information coming in only when the song identity information is not being displayed. Those of skill in the art would not understand that the Frank reference in light of Vogel suggests a display adapted to show both user attract data and the song identity information. But Vogel does teach that the user attract data is used primarily when the machine is idle. No, I don't believe Vogel does teach that. Vogel teaches that the user, that the patter, it refers to the information as patter, can apply at any time. Before, during, or after the playing of a song. But it does use a patter when the machine is otherwise idle. And it can use the patter when the machine is playing. So, by definition, that patter, that display, has not been adapted to show the patter and the song identity information at different times. It's been presented to show the patter at all times. There's been no adaptation of a single device, a single display, to show user attract data at one time and song identity information at another. In the argument before the board, the arachnid attorney likened this to watching a football game and having someone talk to you the entire time. Or walking through an airport and having a Coke machine tell you to come buy Coke. That double display system in Vogel on the antiquated disc jukebox system is not something that a person skilled in the art in 1992, who was digitizing all of the music, feeding it through a single display system and feeding user attract information through that same system at a different time, would not go back and look at the Vogel disc player and use that to improve on the already digitized Frank reference. So, again, what the person skilled in the art would have done with these pieces of art is very important. The board and the examiner improperly gap filled with this person skilled in the art and wherever the art wasn't matching up with the patent claims said that would have been obvious to the person skilled in the art. It also must be noted that the Vogel patent is directed at the vending machine. The single embodiment relating to jukeboxes is not close to the claim limitation user attract as that term is properly construed. There is no factual underpinning to the conclusion made by the examiner and the board that there could be other embodiments of Vogel that could match more closely the user attract mode limitation contained in the patent. That's inference upon inference again. And this type of inference filling is precisely what this court has forbidden in obviousness determinations. Now, Mr. Hankins, you're into your rebuttal time. Would you like to save time for rebuttal or would you like to continue? Time flies when you're having fun, Your Honor. Maybe I'll just have a few more minutes and describe the rest of my argument and then reserve the rest of my time for rebuttal. Thank you. The other claim limitations I wanted to point out to the court with the 189 patent relate to the claims 5 and 9 for direct communications. There, both the board and the patent office relied on floppy disks as being direct communications between the jukebox and a central management system. That is patently wrong. The third error with the 189 is that there is no basis for the purported combination between Vogel and Frank. The 575 patent relates to the much more complex digital management computer system. There's a nerve center in the 575 patent that's not disclosed in either Vogel or Frank. Frank is like a streaming solution where video or audio is streamed from some central database to individual jukeboxes. Now, Frank does possess a microprocessor, correct? That's correct. And that's all it possesses. And from that microprocessor... But wouldn't one skilled in the art take that microprocessor and utilize it for different purposes, especially if they're trying to achieve a higher level of pattern? This is exactly the kind of, I think the solicitor used the word nested argument. The solicitor commits a nested argument right here. The board and the solicitor find that the microcomputer could contain an undisclosed processor. One's not disclosed in Frank. And then they also conclude that that undisclosed processor could perform multiple tasks that are nowhere identified in Frank. Again, we have layering of inference over inference. It's the capabilities of Frank. And just merely saying a person skilled in the art would have concluded all of these things doesn't fill the gap. Assuming that it could only perform one function, wouldn't one skilled in the art look at a microprocessor and say, maybe I can use it to perform more than one function or a different function? He may ask and answer that question, Your Honor. But what's relevant here are all the functions claimed in the patent. The complex song identity information compiled in a song library and a song catalog, the contract information, and there are three or four other functions that we identify in the brief that are nowhere disclosed in either Frank or Vogel. So it's that inference after inference after inference that are used to fill a hole when the art doesn't match the claims. I will go into rebuttal arguments for the rest of my time, Your Honor. Thank you. Judge? Good morning, Your Honors. May it please the Court. Both of Arachnid's patents claim a computer jukebox with a central storage system and a user attract feature, either user attract mode or user attract data. The claims in the 1430 appeal also require that the data be compressed. The elements in Arachnid's claims are either taught in the prior art or would have been obvious modifications. In fact, Arachnid doesn't solve any problems in the prior art. Instead, Arachnid simply filed its patent application at the time that computer implemented jukeboxes were on the cusp of becoming feasible. I'd like to talk a little bit about Vogel. Vogel does teach a user attract mode. It teaches that messages relating to the musical selections available can be delivered before, during, or after the playing of music. So certainly before or after the playing of music would meet the user attract mode. Vogel also has another embodiment where it specifically says, and I think Judge Rayner pointed to this, when the machine is idle, a suitable message is periodically delivered exhorting passersby to make a purchase. And that's in Vogel column two beginning at line 46. Further, Vogel doesn't teach away. There's nothing in Vogel that discourages the use of a single screen for song selections in a user attract mode. Council has said that there's a claim construction issue here, but I think there is not a claim construction issue. The board construed the claim consistent with what Arachnid asked for, that a single display has to display both the user attract mode and the song selection. So the board did not apply the broadest reasonable construction here. And from the briefing, there was no claim construction issue. When you look at all these other limitations in the claims, I think the solicitor is happy to stand on its briefs and we'd be happy to talk about any particular questions that you have or anything about secondary considerations. But I wasn't going to go into each claim limitation unless the court had a question on it. Well, I have a question. Turning back to the single display point that Mr. Hankins was talking about, what does Vogel disclose about the way that the song selection is displayed? Vogel does have two displays and one is... A separate display in the sense that we use the term display? Right. It has a display that's like a control panel where a person comes along to the keyboard and keys in what they want. So that's the song selector display. And then they have a separate display that has the user attract mode, which is like a random sequence of kind of the same information, the song identity information. But it's randomly put out there for people to attract them to Vogel's jukebox or vending machine, whatever. And you say that moving from the two displays to one display is obvious? Right. That Frank has one display and Frank has a central management system with one display and it would have been obvious to a person of ordinary skill in the art to put both of those features on one display. Now the Frank display, I assume this was long in advance of touch screens and the like. I would assume that that was a more or less mechanical display. Is that right? I'm not sure that Frank... Does Frank make that clear? I don't think Frank does make that clear. Okay. Unless you're on... I don't. I don't know. But I would be surprised if it were a touch screen. You're probably right, Your Honor, at this time. All right. Okay, but display. So the term display we're using in a pretty liberal sense probably. Right. Not what we would normally think of as a computer screen type display. Correct. And again, there's no dispute between the parties about what a display means. And also, Arachnid's expert never said that it would be, you know, beyond the skill of one of ordinary skill in the art to put user attract data and song selections on a single display. So if the court has no further questions, I will yield my time. Thank you very much. Mr. Hankins? You're almost out of your rebuttal time, but we'll give you two minutes. Thank you. I appreciate that, Your Honor. Vogel, in fact, is a standalone machine sitting all by itself with a cartoon disc jockey and some old records. Why would a person skilled in the art developing a digital sound system with a central management system with catalogs, libraries, and a user attract mode that's coordinated with that digitally ever look to Vogel? The person skilled in the art would not. There's no person skilled in the art defined by the patent office. There's no person skilled in the art defined by the board. It's an undefined wizard that's used repeatedly throughout the board determination to gap fill the Vogel reference to the Frank reference. The Frank reference, again, was before the patent office. It teaches a dumb central management system, one that just feeds video and audio. There are substantial developments that were made in the patents beyond Frank and certainly beyond the standalone analog version in Vogel. So what would you say is the most important contribution of the 189 and the 575 patent over the prior art? The nerve center. The central management station that's defined in the 575. The computer? Yes, in the 575. Doesn't Vogel have a computer? Vogel may have a computer for showing the cartoon, but it's playing the old discs. Wouldn't a posita come along and say, maybe I can use a computer to show other things as well? The posita would have to do much more than that to get patent claims, your honor. The posita would have to construct a nervous system, a central database that catalogs songs, link them with particular videos, that's the 575 patent, and created a catalog of all that information that flowed from the central nervous system to each of the individual jukeboxes. That is nowhere in Frank and in Vogel. That is the, if you were to say the aha moment of the 189, 575 patent. Thank you. Very well. Thank you. Thank you, Mr. Hankins. The case is submitted. Okay.